[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 20, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-13865

_____

D.C. Docket No. 99-03280 CV-AR-S


WALTER BURNES, et al.,

                                             Plaintiffs,

LEVI A. BILLUPS, III,

                                             Plaintiff-Appellant,

versus

PEMCO AEROPLEX, INC.,
PRECISION STANDARD, INC.,

                                             Defendants-Appellees.


_____

Appeal from the United States District Court for the
Northern District of Alabama

_____

**(May 20, 2002)**

Before CARNES and FAY, Circuit Judges, and HUNT*, District Judge.

_____

   * Honorable Willis B. Hunt, Jr., U.S. District Judge for the Northern District of Georgia,
sitting by designation.

HUNT, District Judge:

This appeal, involving an issue of first impression in this Circuit, concerns the applicability of the doctrine of judicial estoppel in this employment discrimination case. The district court decided that judicial estoppel barred Plaintiff Billups' employment discrimination claims against Defendants Pemco Aeroplex, Inc. and Precision Standard, Inc. (together referred to as "Pemco") because of his failure to disclose the claims in his concurrent bankruptcy proceedings. Billups appeals the grant of summary judgment in favor of Pemco and, for the reasons that follow, we affirm in part and reverse in part. Specifically, Billups is judicially estopped from asserting any claims for monetary damages against Pemco, but he may continue to pursue his claims for injunctive relief.

## I. Factual and Procedural Background

The facts of this case are straightforward. Billups began working for Pemco in November of 1992. On July 3, 1997, he filed for Chapter 13 relief in the United States Bankruptcy Court for the Northern District of Alabama.[1] Billups had a lawyer

---

[1] Chapter 13 allows a portion of a debtor's future earnings to be collected by a trustee and paid to creditors. A Chapter 13 debtor does not receive a discharge of his debts; rather, the debtor is allowed to extend or reduce the balance of his debts through a plan of rehabilitation. In contrast, Chapter 7 allows a trustee to collect and liquidate a debtor's assets, if any, in exchange for a discharge of the debtor's

for the entirety of his bankruptcy proceedings. Pemco, his employer, did not participate in the bankruptcy. The Chapter 13 schedule of assets form specifically asked Billups to report any contingent or unliquidated claims of any kind.[2] Additionally, the statement of financial affairs form, filed in the Chapter 13 case, asked Billups to list all suits to which he is or was a party within one year of filing for bankruptcy. At the time that he filled out these forms, Billups was not participating in a lawsuit and indicated that on his forms. Then, on January 30, 1998 (six months later), Billups filed a charge of discrimination with the EEOC against Pemco. On December 9, 1999, Billups, along with thirty-five (35) other individuals, filed an employment discrimination suit against Pemco in the Northern District of Alabama seeking both monetary and injunctive relief. Billups never amended his Chapter 13 schedule of assets or statement of financial affairs to include his lawsuit against Pemco.

In October of 2000, Billups requested that his Chapter 13 bankruptcy petition be converted to a Chapter 7 case. As part of the conversion, the bankruptcy court ordered Billups to file amended or updated schedules to the Chapter 7 trustee

---

debts.

[2] Debtors filing for bankruptcy must complete and submit several standard forms to the bankruptcy court concerning the debtor's finances.

reflecting any financial changes since he first filed schedules with the bankruptcy court. However, Billups did not report the pending lawsuit against Pemco. When he filed the amended schedules, he certified to the bankruptcy court that the schedules were true and accurate. On January 23, 2001, Billups received a "no asset," complete discharge of his debts, totaling over $38,000. The parties agree that the bankruptcy court, the bankruptcy trustee, and Billups' creditors never knew about the pending lawsuit.

Pemco moved for summary judgment on all of Billups' claims on May 3, 2001, asserting that the doctrine of judicial estoppel barred Billups from pursuing his claims against Pemco because he failed to disclose the claims to the bankruptcy court. Billups appeals the district court's grant of summary judgment.

## II. Standard of Review

We review the granting of summary judgment <u>de novo</u>, and the district court's findings of fact for clear error. <u>Levinson v. Reliance Standard Life Ins. Co.</u>, 245 F.3d 1321, 1325 (11th Cir. 2001). Additionally, we review the district court's application of judicial estoppel for abuse of discretion. <u>Talavera v. School Bd. of Palm Beach County</u>, 129 F.3d 1214, 1216 (11th Cir. 1997).

4

### III.  Discussion

#### *A.    Application to Monetary Claims*

Billups argues that the district court erred in applying the doctrine of judicial estoppel in this case because: (1) Pemco was not a party to the bankruptcy proceedings; (2) Pemco was not prejudiced by the omission of the claim in the bankruptcy proceedings; and (3)   Billups did not have the requisite intent to manipulate the judicial system.

In this case, judicial estoppel is raised in the context of a bankruptcy proceeding and a federal employment discrimination case; therefore, federal law governs our analysis.  See Chrysler Credit Corp.  v.  Rebhan, 842 F.2d 1257, 1261 (11th Cir. 1988), abrogated on other grounds by, Grogan v.  Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999).  Judicial estoppel is an equitable doctrine invoked at a court's discretion.  New Hampshire v.  Maine, 532 U.S. 742, 750, 121 S.Ct.  1808, 1815, 149 L.Ed.2d 968 (2001) (internal citations and quotations omitted).  Under this doctrine, a party is precluded from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.  Judicial estoppel is an equitable concept intended to prevent the perversion of the judicial process." 18 James Wm. Moore et al., Moore's Federal Practice § 134.30, p.  134-62 (3d ed.  2000).  The

5

purpose of the doctrine, "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire, 532 U.S. at 749-50, 121 S.Ct. at 1814 (internal citations and quotations omitted). This Circuit has explained that, "[j]udicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." American Nat'l Bank of Jacksonville v. Federal Dep. Ins. Corp., 710 F.2d 1528, 1536 (11th Cir.1983) (internal citation omitted); see also, Coastal Plains, 179 F.3d at 205 (explaining that, "[t]he purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest.")(internal quotations omitted). In the Eleventh Circuit, courts consider two factors in the application of judicial estoppel to a particular case. Salomon Smith Barney, Inc. v. Harvey, M.D., 260 F.3d 1302, 1308 (11th Cir. 2001). "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Id.

Recently, the Supreme Court observed that, "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle;" nevertheless, the Court went on to enumerate

6

several factors that inform a court's decision concerning whether to apply the doctrine in a particular case. New Hampshire, 532 U.S. at 750-51, 121 S.Ct. at 1815 (internal citations omitted). Courts typically consider: (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party. Id. This list is by no means exhaustive, however, because the Court went on to explain that "[i]n enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." Id. We conclude that the two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions referenced above, and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case. We recognize that these two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine. With these principles in mind, we turn to the issue at hand.

7

There is no debate that Billups' financial disclosure forms were submitted under oath to the bankruptcy court; therefore, the issue becomes one of intent. Before turning to the question of intent, however, we first outline a debtor's duty to disclose under the bankruptcy laws and address some of Billups' other arguments.

A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. 11 U.S.C. § 521(1), and 541(a)(7). The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change. See Coastal Plains, 179 F.3d at 208. Full and honest disclosure in a bankruptcy case is "crucial to the effective functioning of the federal bankruptcy system." Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al., 81 F.3d 355, 362 (3d Cir. 1996). For example, creditors rely on a debtor's disclosure statements in determining whether to contest or consent to no asset discharge. Bankruptcy courts also rely on the accuracy of the disclosure statements when considering whether to approve a no asset discharge. Accordingly, "the importance of full and honest disclosure cannot be overstated." Id.

Objecting to the district court's application of judicial estoppel in this case, Billups first argues that Pemco cannot rely on the doctrine of judicial estoppel because it was not a creditor or a party to the bankruptcy proceedings. Billups is incorrect.

8

The doctrine of judicial estoppel protects the integrity of the judicial system, not the litigants; therefore, numerous courts have concluded, and we agree, that "[w]hile privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required." Ryan, 81 F.3d at 360; see also, Patriot Cinemas, Inc. v. General Cinema Corp. et al., 834 F.2d 208, 214 (1st. Cir. 1987)(same); Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982)(same).

Billups further contends that Pemco cannot rely on the doctrine of judicial estoppel because Pemco was not prejudiced by the omission of the claim from the bankruptcy proceeding. Again, Billups is incorrect because, similar to the reasoning concerning privity, courts have concluded that since the doctrine is intended to protect the judicial system, those asserting judicial estoppel need not demonstrate individual prejudice. Coastal Plains, 179 F.3d at 205 (explaining that, "[b]ecause the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary."); see also, Ryan, 81 F.3d at 360 (explaining that detrimental reliance is not required in judicial estoppel cases); Matter of Cassidy, 892 F.2d 637, 641 n.2 (7th Cir. 1990)(same).

Finally, Billups argues that he did not possess the requisite intent to mislead the bankruptcy court. Instead, he claims that inadvertent error resulted in the continued

9

omission of his discrimination claim from his bankruptcy schedules. Billups is correct that the doctrine of judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence. American Nat'l, 710 F.2d at 1536 (explaining that judicial estoppel applies to the "calculated assertion" of divergent positions); see also, Coastal Plains, 179 F.3d at 206 (explaining that the doctrine of judicial estoppel is generally applied when, "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.")(internal quotations and citation omitted); Ryan, 81 F.3d at 362-63 ("[T]he doctrine of judicial estoppel does not apply when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court."); Matter of Cassidy, 892 F.2d at 642 (explaining that judicial estoppel should not be invoked "where the former position was the product of inadvertence or mistake.").

That being said, several circuits, in considering the particular issue of judicial estoppel and the omission of assets in a bankruptcy case, have concluded that deliberate or intentional manipulation can be inferred from the record. The Fifth Circuit concluded that, "the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Coastal Plains, 179 F.3d at 210. In that case, the court held that judicial estoppel barred the plaintiffs from

10

asserting claims previously undisclosed to the bankruptcy court because the plaintiffs both knew about the undisclosed claims and had the motive to conceal them from the bankruptcy court. Id. at 212; see also, Payless Wholesale Distrib. Inc. v. Alberto Culver, Inc., 989 F.2d 570 (1st Cir. 1993)(holding that judicial estoppel barred a former debtor from asserting racketeering, antitrust and fraud claims because the debtor intentionally failed to disclose the claims in a prior bankruptcy proceeding, even though it knew about the claims and had the motive to conceal them).

The Third Circuit, in Ryan, 81 F.3d at 363-364, concluded that intentional manipulation of the judicial system on the part of the debtor could not be inferred because the record contained nothing to suggest that the debtor deliberately took inconsistent positions to gain an unfair advantage. Furthermore, the debtor in Ryan also failed to disclose potential liabilities to the bankruptcy court, which the Third Circuit concluded offset his failure to disclose potential assets. Id. at 363. Years earlier, in Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 418-19 (3d Cir. 1988), the Third Circuit held that judicial estoppel barred a Chapter 11 debtor from pursuing claims against a bank that it did not reveal during previous bankruptcy proceedings. The debtor listed its debt to the bank as a liability in the bankruptcy. However, the debtor did not reveal to the bankruptcy court the possibility of an offset of that debt due to the debtor's claim against the bank. Id. at 417. The Third Circuit

11

later explained, in Ryan, that while it did not make an express finding of intentional misconduct in Onedia, "there was ample evidence in the [Onedia] record from which an inference of deliberate manipulation could be drawn." Ryan, 81 F.3d at 363. The Third Circuit concluded that the debtor in Onedia had knowledge of its claim when it completed the schedule of assets in the bankruptcy, and that it also had the motive to conceal the claims because creditors may have voted against the reorganization had they known about the potential offset. Onedia, 848 F.2d at 417-418; Ryan, 81 F.3d at 363.

Relying on the analysis and reasoning in the above referenced cases, and keeping in mind that judicial estoppel is an equitable doctrine invoked at a court's discretion, it is clear that the record in this case contains sufficient evidence from which to infer intentional manipulation by Billups. Specifically, it is undisputed that Billups filed and pursued his employment discrimination claims during the pendency of his Chapter 13 case, but never amended his financial statements to include the lawsuit. Additionally, at the time that Billups petitioned the bankruptcy court to convert his case to Chapter 7, he had already filed, and was pursuing, the employment claims. Nevertheless, he once again failed to disclose the pending lawsuit to the bankruptcy court. These undisputed facts make it clear that Billups had knowledge of his claims during the bankruptcy proceedings.

12

As to motive, it is undisputed that Billups stood to gain an advantage by concealing the claims from the bankruptcy court. It is unlikely he would have received the benefit of a conversion to Chapter 7 followed by a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages. As discussed more fully below, Billups even acknowledges, at least implicitly, that disclosing this information would have likely changed the result of his bankruptcy because he now seeks to re-open his bankruptcy to include the undisclosed claims. Given these undisputed facts, we think the district court correctly concluded that Billups possessed the requisite intent to mislead the bankruptcy court and correctly barred him from pursuing his discrimination claims, at least to the extent that he sought money damages.

In an attempt to remedy the situation, Billups argues that he should now be allowed to re-open his bankruptcy case to amend his filings and include his lawsuit against Pemco. We disagree. The success of our bankruptcy laws requires a debtor's full and honest disclosure. Allowing Billups to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors'

assets. See Traylor v. Gene Evans Ford, LLC, 185 F.Supp.2d 1338, 1340 (N.D. Ga. 2002)(denying a debtor's request to back up and disclose a previously undisclosed claim to the bankruptcy court in the face of an adversary's challenge); Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1376 (S.D. Ga. 2000)(same); Chandler v. Samford University, 35 F.Supp.2d 861, 863-865 (N.D. Ala. 1999)(applying the doctrine of judicial estoppel to bar a plaintiff from asserting a previously undisclosed tort claim, even though she eventually informed her attorney and the bankruptcy court of the claim).

## B.    *Application to Injunctive Claims*

Finally, Billups urges us to limit the application of judicial estoppel in this case to his claims for monetary relief, and allow him to proceed with his claim for injunctive relief against Pemco. The issue, therefore, is whether judicial estoppel applies to the pursuit of an unreported claim for injunctive relief. In this instance, we conclude that it does not.

Billups seeks injunctive relief prohibiting Pemco and its officers, supervisors, agents, employees or successors from engaging in illegal employment practices. He also asks that the Defendants be required to adopt employment practices that are in accordance with federal employment laws. With respect to the applicability of

14

judicial estoppel to this case, we are concerned with Billups' failure to disclose his claim for millions of dollars in damages to the bankruptcy court, because that information would have been important to the court in determining whether his case should have been converted to Chapter 7, or whether he qualified for a no asset discharge. The bankruptcy court must be confident that it has the full and honest disclosure of the debtor concerning any potential assets that could increase the value of the estate for the creditors. See New Hampshire, 532 U.S. at 750-51, 121 S.Ct. at 1815 (explaining that there is not "an exhaustive formula for determining the applicability of judicial estoppel," and courts should consider the facts of a particular case in its analysis). The Supreme Court explains that:

> The federal system of bankruptcy is designed not only to distribute the property of the debtor, not by law exempted, fairly and equally among his creditors, but as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character, after the property which he owned at the time of bankruptcy has been administered for the benefit of creditors. Our decisions lay great stress upon this feature of the law--as one not only of private but of great public interest in that it secures to the unfortunate debtor, who surrenders his property for distribution, a new opportunity in life.

Stellwagen v. Clum, 245 U.S. 605, 617, 38 S.Ct. 215, 218-19, 62 L.Ed. 507 (1918).

In this situation, knowledge that the debtor was pursuing a discrimination claim seeking injunctive relief that offered no monetary value to the estate, would not, in all

15

likelihood, have changed the bankruptcy court's determination about how to proceed with the debtor's bankruptcy. What is clear is that in order to gain the benefits of the bankruptcy laws, the debtor must first surrender his non-exempt property for the benefit of his creditors. The trustee and the creditors are interested in the debtor's property that can add anything of value to the estate. We conclude that Billups' undisclosed claim for injunctive relief offered nothing of value to the estate and was of no consequence to the trustee or the creditors.[3] We decide, then, that the important and necessary reasons that bar Billups' monetary claims do not affect his efforts to change, through injunctive relief, Pemco's employment practices. He may pursue his claims for injunctive relief.

## IV. Conclusion

For the reasons set forth above, summary judgment in favor of Pemco on Billups' claims for monetary relief is AFFIRMED. However, summary judgment in favor of Pemco on Billups' claims for injunctive relief is REVERSED and the case is REMANDED to the district court for further proceedings on those claims consistent

---

[3]In reaching this conclusion, we express no opinion about other cases of undisclosed claims for non-monetary relief to which judicial estoppel may or may not apply. The facts of a particular case will always guide a court's analysis of this issue.

with this opinion.