### In re James K. PEAGLER, Debtor.

### No. 02–30851–DHW.

United States Bankruptcy Court,
M.D. Alabama.

July 16, 2002.

Richard D. Shinbaum, Montgomery, AL, for Debtor.

Richard C. Dean, Jr., Montgomery, AL, for Creditor.

Curtis C. Reding, Montgomery, AL, Trustee.

Sabrina McKinney, Montgomery, AL, for trustee.

Gullatte Hunter, Montgomery, AL, for Checkcare Systems.

## MEMORANDUM OPINION

DWIGHT H. WILLIAMS, Bankruptcy Judge.

The matters before the court are the objections of Checkcare Systems and the chapter 13 trustee to the confirmation of the debtor's chapter 13 plan. Both of these objections center upon the valuation of the debtor's Greenville, Alabama residence. This court's jurisdiction regarding this dispute derives from 28 U.S.C. § 1334 and the general order of reference by the United States District Court for the Middle District of Alabama. An objection to confirmation of a chapter 13 plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L) thereby giving this court jurisdiction to enter a final order and judgment.

Checkcare Systems complains that the plan improperly classifies its judgment claim as an unsecured one. Checkcare Systems contends that there is equity in the debtor's home, over and above the consensual mortgage and the homestead exemption, and that its judgment claim attaches to that equity thereby securing the claim.

The trustee maintains that the debtor's plan, which is a 30% composition of the unsecured claims, does not pay unsecured creditors as much as they would receive were the estate liquidated in chapter 7.

The plan's failure to satisfy the so-called "best interest test," according to the trustee, is a result of the unencumbered and nonexempt equity in the debtor's home.

Both objections were considered at an evidentiary hearing on June 10, 2002. At the hearing the parties were represented by counsel. Checkcare Systems's attorney is Gullatte Hunter. Trustee's counsel is Sabrina McKinney. The debtor's attorney is Richard Shinbaum. Upon consideration of the evidence and arguments of the parties' counsel, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtor built his residence at 300 Hicks Street, Greenville, Alabama in 1993 at a cost of $108,000. Empire Mortgage has the only mortgage on the property. The balance of its claim is $132,541. Recent appraisals have been made of the property and have resulted in vastly disparate estimates of its value.

Checkcare and the trustee rely upon the appraisal of Joseph L. Thomas. Thomas is a state-licensed appraiser, who has some, but limited, experience appraising property in the Greenville area.[1] Thomas first appraised the debtor's residence in February 2000 in conjunction with the debtor's efforts to obtain a loan from Home Equity Mortgage Company. That appraisal fixes the value of the property at $170,000 using both the cost and comparable sales approaches.

Thomas updated his February 2000 appraisal in May 2002. The updated appraisal fixes the value of the residence at $175,500 using the cost approach method

---

1. Mr. Thomas testified that he has averaged one Greenville area appraisal each year for the past several years.

and $170,000 under the comparable sales approach method.[2]

The debtor, on the other hand, relies upon the appraisal of Jerry W. McCullough. McCullough, like Thomas, is a state-licensed real property appraiser. Unlike Thomas, however, McCullough has considerable appraisal experience in the Greenville area.[3] McCullough's May 2002 appraisal values the property at $84,833 using the cost approach and $85,700 using the comparable sales approach.[4]

In addition to these appraisals, one other independent indicium of the property's value was admitted into evidence. The tax assessor for Butler County, Alabama values the property at $107,600 for ad valorem tax purposes. While not an independent source, the debtor valued his home under the current plan at $110,900.

This is not the debtor's first chapter 13 case. His prior case was filed in this court in June 2000 (Case No. 00–2961). In that proceeding the debtor listed the value of his residence at $170,000. Peagler's confirmed plan provided that he pay his creditors, both secured and unsecured, in full.

Numerous factors exist which negatively affect the value of the Peagler house. Both appraisers testified that the real estate market in the Greenville area is slow. Recent area plant closures have affected the general economy thereby adversely impacting the Greenville housing market.

Apart from the state of the economy and the housing market, the Peagler home is in poor repair. McCullough, who inspected the home in the course of his appraisal, testified that the home suffered from

"acute deferred maintenance."[5] McCullough noted flooring tears in both the vinyl and carpet floor covering, missing power plates, leaking roof resulting in damaged ceilings and walls, and a bullet hole in the front door. McCullough testified that the repair costs would total approximately $60,000. Further, the home is located in what McCullough described as an "undesirable" neighborhood. The neighborhood is subject to excessive noise and frequent loitering.

Upon this evidence, the court finds that the Peagler home is worth no more than the $132,541 balance owing to the mortgagee. The McCollough appraisal is found more persuasive than that of Thomas because 1) McCullough has more appraisal experience in the Greenville area giving him greater awareness of intangible factors, such as neighborhood conditions and desirability, which could adversely affect valuation, 2) McCullough recognizes and accounts for the depressed real estate market in Greenville, and 3) McCullough's appraisal is significantly closer to that of the tax assessor than is the Thomas appraisal, which provides a degree of corroboration to the McCullough appraisal.

Finally, the court gives less credence to the Thomas appraisal for another reason. As noted, Peagler built this house in 1993 for $108,000. Approximately seven years later, Thomas appraised the property for $170,000. This amounts to almost a 60% increase in the property's value during a time when the economy and housing market were experiencing a downturn and when the property, due to neglected re-

---

**2.** Checkcare Exhibits 1 and 2 are the February 2000 and May 2002 appraisals made by Thomas.

**3.** McCullough testified that he averages making twenty Greenville area real estate appraisals each year.

**4.** Debtor's Exhibit 1 is the McCullough appraisal, which is dated May 2002.

**5.** The court notes that Thomas also inspected the home during the course of his appraisal but noted only minor defects.

pairs, has deteriorated. No evidence was offered to explain this dramatic appreciation, and the court finds the appraisal less convincing.

### CONCLUSIONS OF LAW

■ Having found that the value of the debtor's home is less than the consensual mortgage, the court must conclude that the debtor's plan has properly classified Checkcare's claim as unsecured in spite of its having been reduced to judgment. 11 U.S.C. § 506 defines a secured claim in bankruptcy as:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). In other words, a claim is secured to the extent of the value of the collateral. Here, there is no value in the Peagler home over and above the $132,541 consensual mortgage to secure the Checkcare judgment. Therefore, pursuant to 11 U.S.C. § 506(d), Checkcare's judgment lien is void.[6]

Likewise, the court must conclude that the "best interest test" of 11 U.S.C. § 1325(a)(4) is satisfied.[7] Were Peagler's estate liquidated under chapter 7, nothing would be paid to unsecured creditors as a result of the liquidation of the Peagler home.

■ Finally, one other legal issue is due consideration. Checkcare and the trustee assert that the debtor is prevented, under the doctrine of judicial estoppel, from presenting evidence contradicting the $170,000 value that he assigned to his home in the prior chapter 13 case. The court disagrees.

■ Judicial estoppel is an equitable doctrine invoked at a court's discretion. *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001). Its purpose "is to protect the integrity of the judicial process ... by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire,* 532 U.S. at 749–50, 121 S.Ct. at 1814 (citations omitted). In the Eleventh Circuit "[j]udicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *American Nat'l Bank v. Federal Dep. Ins. Corp.,* 710 F.2d

---

6. 11 U.S.C. § 506(d) provides:

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
>   (1) such claim was disallowed only under 502(b)(5) or 502(e) of this title; or
>   (2) such claim is not an allowed claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

7. 11 U.S.C. § 1325(a)(4) provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—...
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

1528, 1536 (11th Cir.1983) (citation omitted).

▮ Although not an exhaustive list, the Supreme Court has enumerated factors that courts should consider in deciding whether the judicial estoppel doctrine should be invoked. They include: 1) whether the position espoused in the present case is "clearly inconsistent" with the position previously taken; 2) whether the tribunal was persuaded to accept the earlier position so that acceptance of the inconsistent position in the later proceeding creates a perception that the court was misled; and 3) whether the party advancing the position would gain an unfair advantage over the opposing party. *New Hampshire,* 532 U.S. at 750–51, 121 S.Ct. at 1815.

▮ Further, in this circuit courts are instructed to apply a two-factor test to determine the applicability of the doctrine of judicial estoppel in a particular case. *Salomon Smith Barney, Inc. v. Harvey, M.D.,* 260 F.3d 1302, 1308 (11th Cir.2001). "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* Only recently, the Eleventh Circuit held that these two factors

> are consistent with the Supreme Court's instructions . . . , and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case. We recognize that these two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine.

*Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285–86 (11th Cir.2002).

▮ Finally, "the doctrine of judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence." *Id.* at 1286. *See also American Nat'l Bank,* 710 F.2d at 1536 (holding the doctrine applies to the "calculated assertion" of inconsistent positions); *Browning Manufacturing v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197, 206 (5th Cir.1999) (holding the doctrine is generally applied when "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suiters seeking justice."); *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 362 (3rd Cir. 1996) (holding that the doctrine does not apply when the prior position was taken because of "a good faith mistake rather than as a part of a scheme to mislead the court."); *In re Cassidy,* 892 F.2d 637, 642 (7th Cir.1990) (holding that the doctrine is not invoked "where the former position was the product of inadvertence or mistake.").

▮ Complete and accurate disclosures by debtors of their assets is essential for the effective administration of the bankruptcy system. The sheer number of bankruptcy cases filed makes it unrealistic to expect trustees to conduct personal inspections of debtors' property in each case. The court, trustees, and creditors must be able to place some semblance of reliance upon the debtors' disclosures. Therefore, careful scrutiny of the debtors' motives and actions must be taken when gross inconsistencies arise. This court fears that all too often fraud can be passed off and defended in the name of carelessness and inadvertence.

There is no dispute that Peagler valued his home two years ago in the prior case at $170,000 and now values the same proper-

ty at $110,900. Considering the totality of the circumstances in this case, however, the court is not convinced that this inconsistency stems from Peagler's calculated and intentional attempt to make a mockery of justice by taking advantage of the exigencies of the circumstances. Therefore, the doctrine of judicial estoppel does not bar the court's consideration of Peagler's evidence supporting a lesser value than was disclosed in the earlier bankruptcy.

The court reaches this conclusion for a number of reasons. First, the debtor's plan in the prior case provided for the payment of his debts in full. As a result, valuation of his home was not at issue. Peagler was not required to persuade the court or the trustee to accept the $170,000 valuation. The $170,000 valuation resulted in neither an advantage nor disadvantage to Peagler or to his creditors in the prior full payment case.

Secondly, there is no evidence that Peagler possesses special expertise in real estate valuation. In his first case he merely relied upon the valuation as set by the Thomas appraisal. There is no hint of dishonesty or manipulation in that reliance. In the case at bar where Peagler is proposing a composition plan, a closer examination of the home's value was necessary. The evidence convinces the court that the lower valuation used in this case is a product of a closer examination and not of Peagler's taking improper advantage of the situation.

Finally, evidence was admitted in this case by two state-licensed appraisers. Their assessment of the property's value differed by some $90,000. McCollough's appraisal is less than half the value fixed by Thomas. That two licensed appraisers could arrive at such significantly divergent values lend credence to the proposition that the debtor, who has no real estate valuation expertise should not be judicially estopped from having the court consider evidence inconsistent with his earlier disclosure absent evidence of intentional manipulation.

## CONCLUSION

For the foregoing reasons the court concludes that the objections by Checkcare Systems and the chapter 13 trustee to the confirmation of the debtor's chapter 13 plan are not well taken and are due to be overruled. By separate order, consistent with this memorandum opinion, the objections will be overruled and the plan confirmed.

## ORDER OVERRULING OBJECTIONS

In accordance with the Memorandum Opinion entered this day, it is hereby

ORDERED that the objections filed by the chapter 13 trustee and Checkcare Systems to confirmation of the debtor's proposed chapter 13 plan are OVERRULED, and the plan will be confirmed by separate order.