[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 07 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12733
Non-Argument Calendar

_____

Agency Nos. A95-899-944
A95-899-945

JOHN JAIRO BETANCUR,
MARTHA INES VELEZ SANCHEZ,
ERIKA BETANCUR VELEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(January 7, 2008)**

Before TJOFLAT, BLACK and KRAVITCH, Circuit Judges.

PER CURIAM:

John Jairo Betancur, his wife Martha Ines Velez Sanchez, and his daughter Erika Betancur Velez (collectively "the petitioners'), all natives and citizens of Colombia, petition this court for review of the Board of Immigration Appeals's ("BIA") affirmance of the Immigration Judge's ("IJ") order of removal. After a thorough review of the record, we dismiss the petition in part and deny in part.

I. Background

The petitioners arrived in the United States in 1999 on non-immigrant visas, remained beyond the expiration period, and were issued notices to appear charging them with removability under INA § 237(a)(1)(B); 8 U.S.C. § 1227(a)(1)(B). Betancur, as lead respondent, filed an application for withholding of removal in 2002, alleging that he had been persecuted by members of the Revolutionary Armed Forces of Colombia ("FARC") on account of his political opinion.[1]

At the removal hearing, Betancur reported the following difficulties: In October 1997, a member of FARC came to Betancur's auto shop and warned Betancur to cease his support of the New Political Generation of Antioquia party, of which Betancur was a member. In April 1998, Betancur received threatening

---

[1] Betancur also requested relief under asylum and the United Nations Convention Against Torture ("CAT"). Betancur does not challenge the decision that his asylum petition was untimely, or the denial of CAT relief. Therefore, he has abandoned these issues. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005). Importantly, withholding of removal does not provide for derivative benefits. Therefore, even if the record compelled withholding of removal, only Betancur, and not his wife or daughter, would be entitled to relief. See Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007).

phone calls after he made a speech at a local youth soccer game.  Although

Betancur stopped his work with the party after this incident, a man came to the

shop in July 1998 to welcome Betancur to FARC.  Betancur reported this to the

police, who did not investigate.  In September 1998, as he and his wife walked to

church, Betancur was attacked and beaten by two men from FARC.  Betancur was

treated at the area hospital, he filed a police report, and he went to stay with his

father in another city.  In April 1999, FARC members burned down his auto shop

and placed a threatening phone call to Betancur's father.  Betancur then arranged to

leave Colombia.

During the hearing, the government tried to clarify the dates of the police

reports submitted in support of the asylum application.  One report was dated April

1997 and referred to a beating.  Betancur stated that there was a mistake in the

date; he had not filed a report in 1997 and he could not explain why the 1997

report made reference to the 1998 beating.  Betancur also stated that he filed a

police report about the beating in April 1998, but then stated that the beating was

in September 1998.  He explained that he filed two reports in September 1998, but

neither report was in the record.  The government also questioned why the

September 1998 threatening phone call was not listed in the asylum application.

In support of his application, Betancur submitted copies of the police

reports, letters from friends and party members, hospital records, and the State

3

Department 2004 Country Report. The police report dated September 11, 1998, involved the incident with FARC in Betancur's shop in October 1997 in which FARC attempted to recruit Betancur to work for them. The second report, dated April 17, 1997 mentioned a beating by FARC members as Betancur was on his way to church. The hospital records submitted showed that Betancur was treated and released on September 14, 1998 for pain, bruising, and multiple lesions "caused by violent aggression."

The IJ denied relief, calling the case "troublesome" because the documents submitted were inconsistent with the testimony. Although the IJ expressed concern over Betancur's credibility given the inconsistencies in the testimony and the supporting documents, the IJ did not make an explicit adverse credibility finding. The IJ then explained that even if Betancur was credible, there was no well founded fear of persecution, as FARC was trying to recruit Betancur rather than punish him. The IJ noted that Betancur had left Colombia six years earlier, and there was no evidence FARC continued to look for him.

Betancur appealed to the BIA, arguing that the IJ erred by finding he lacked credibility. The BIA affirmed, concluding that the IJ's adverse credibility determination was not clearly erroneous in light of the inconsistencies. The BIA also upheld the IJ's finding as to the lack of evidence of a well founded fear of future persecution. Betancur now petitions this court for review.

II. Discussion

We review "only the decision of the BIA, except to the extent that it expressly adopts the IJ's opinion." Nreka v. U.S. Att'y Gen., 408 F.3d 1361, 1368 (11th Cir. 2005) (internal quotations and citation omitted). To the extent that the BIA's or IJ's decision was based on a legal determination, review is de novo. Id. The IJ's and BIA's factual determinations are reviewed under the substantial evidence test, and we will "affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (alteration in original) (internal quotations and citations omitted); Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (quotation and internal marks omitted).

To obtain withholding of removal, an applicant must establish that his "life or freedom would be threatened in that country because of his race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "The alien bears the burden of demonstrating that it is 'more likely than not' []he will be persecuted or tortured upon being returned to [his] country." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (quoting Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002)).

5

An applicant for withholding of removal may satisfy his burden of proof in either of two ways. First, an alien may establish "past persecution in his country based on a protected ground." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). If the applicant can show that the persecution was, at least in part, motivated by a protected ground, then the applicant can establish eligibility for withholding of removal. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006). If an alien establishes "past persecution," a rebuttable presumption arises that he has a "well-founded fear of future persecution," and the burden then shifts to the Department of Homeland Security to show that the conditions in the country have changed or the alien could avoid a future threat through relocation. Mendoza, 327 F.3d at 1287.

Second, an alien is entitled to withholding of removal if he establishes "that it is more likely than not that [ ]he would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to that country." 8 C.F.R. § 208.16(b)(2).

In considering a petitioner's claim for withholding of removal, the IJ must determine credibility in the same manner as in asylum cases. See 8 U.S.C. § 1231(b)(3)(C); 8 U.S.C. § 1158(b)(1)(B)(ii)-(iii). Thus, to establish entitlement to relief, the applicant must establish past persecution with "specific and credible evidence." Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1202 (11th Cir. 2005); see

also 8 C.F.R. § 208.16(b) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof [in a withholding of removal case] without corroboration."). IJs must make "clean determinations of credibility." Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257 (11th Cir. 2007); Yang, 418 F.3d at 1201 ("Though the IJ made a reference to Yang's claims as a 'ridiculous fabrication' and stated that her testimony was 'extremely inconsistent and [made] absolutely no sense whatsoever,' we are not persuaded that this was an explicit finding that Yang's testimony was not credible.").

In his appeal to the BIA, Betancur alleged that the IJ's adverse credibility finding was in error. He now asserts that the IJ did not make an *explicit* adverse credibility finding. The government responds that in light of his arguments before the BIA, Betancur cannot argue now that the finding was not explicit.

We decline to apply the doctrine of judicial estoppel as the government suggests.[2] Nevertheless, Betancur has not exhausted the issue of whether the finding was explicit, and it is not properly before us. Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001). Moreover, because Betancur no longer asserts that the IJ improperly concluded that he lacked

---

[2] Under the equitable doctrine of judicial estoppel, a party is prevented from "'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) (citation omitted); see also Palmer & Cay, Inc. v. Marsh & McLennan Companies, Inc., 404 F.3d 1297, 1307 n.16 (11th Cir. 2005).

7

credibility, he has waived this issue. Sepulveda, 401 F.3d at 1228. Accordingly, we dismiss the petition on these grounds.

Thus, the only issue before this court is whether the IJ and BIA properly denied withholding of removal. Both the BIA and the IJ denied relief because Betancur was not persecuted on account of a protected ground. Because Betancur can no longer argue that his testimony was credible for the reasons discussed above, we consider the remaining evidence to determine if the record compels reversal. See Forgue, 401 F.3d at 1287 ("[A]n adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant. That is, the IJ must still consider all evidence introduced by the applicant.").

Here, Betancur submitted the police reports, medical records, and letters from other party members to support his claims. These documents, however, also go to the IJ's and BIA's credibility concerns because they were inconsistent with the testimony. As such, they do not support, much less compel, the conclusion that Betancur suffered past persecution on account of a protected ground or that he more likely than not would be persecuted if he returned to Colombia. The only other evidence submitted was the State Department Country Reports. And although this report confirms that FARC often threatens its political opponents,

8

there is nothing in the record to support Betancur's allegations.  Accordingly, in

light of the lack of other evidence, we deny the petition on this ground.

DISMISSED IN PART; DENIED IN PART.