[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14052
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-03756-WCO

ANNIE PAULINE WARD,

Plaintiff-Appellant,

versus

AMS SERVICING, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 31, 2015)

Before ROSENBAUM, KRAVITCH and ANDERSON, Circuit Judges.

PER CURIAM:

Annie Ward appeals the district court's dismissal of her civil suit against

AMS Servicing, LLC (AMS), alleging violations of the Fair Debt Collection

Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*.  After a thorough review, we affirm.

## I.

The facts of this case are not in dispute.  In June 2006, Ward entered into a loan transaction to finance the purchase of residential property located in Atlanta, Georgia.  Resmae Mortgage Corporation (Resmae) originated the loan in the principal amount of $221,000 (the Note).  To secure payment on the Note, Ward delivered a Security Deed to Mortgage Electronic Registration Systems (MERS), as grantee/nominee for Resmae.  On June 24, 2009, Ward and Specialized Loan Servicing, LLC, the original servicer on Ward's loan, entered into a Loan Modification Agreement.  Under the terms of that agreement, Ward agreed to pay $1,182.89 per month.  In 2010, MERS conveyed its interest in the Security Deed to FCDB SNPWL Trust (FCDB).  AMS acts as the servicer for FCDB.

Ward stopped making monthly mortgage payments and subsequently filed a petition for Chapter 13 bankruptcy.  FCDB then filed a motion for relief in the bankruptcy court from the automatic stay including, but not limited to, the right to foreclose.  *See* 11 U.S.C. § 362(a)(3) (providing that a filed petition operates as a stay against, *inter alia*, "any act to obtain possession of property . . . or to exercise control over property of the estate[.]").  On June 26, 2013, the parties entered into a consent order that was signed by the bankruptcy court judge.  The terms of the

order provided that the parties "stipulate and consent" that the "post-petition arrearage through May 20, 2013, totals $11,881.55, consisting of monthly payments for the months of September 1, 2012 through May 1, 2013, each at $1,319.50, and $826.00 in reasonable attorney's fees and costs, less the suspense balance of $819.95." The order further provided that once the total post-petition arrearage had been paid, the regular monthly mortgage payments would resume and that the sums "shall be paid" to AMS. As a result of the consent order, the bankruptcy court denied FCDB's motion for relief from the automatic stay.

In November 2013, Ward[1] filed suit in the district court, alleging that AMS had violated the FDCPA by falsely representing the amount of her monthly mortgage payments. In her amended complaint, Ward argued that her monthly payment was supposed to be only $1,182.89, but that AMS had been charging her $1,319.50 per month. AMS moved to dismiss the complaint asserting, among other things, that Ward had stipulated to the amount of her monthly payments in the bankruptcy proceeding.

In her report and recommendation (R&R), the magistrate judge recommended dismissing Ward's suit as barred by judicial estoppel. Specifically, the magistrate judge highlighted that Ward had agreed to monthly payments of $1,319.50 until her mortgage was up-to-date when the parties resolved their

---

[1] Ward retained the same counsel in both the bankruptcy proceeding and in her suit before the district court.

3

dispute in bankruptcy court.  As such, Ward was estopped from taking inconsistent positions as to the amount of money owed on her mortgage in the bankruptcy proceeding and the instant civil lawsuit.  Overruling Ward's objections, the district court adopted the R&R and dismissed her suit.

On appeal, Ward argues that the doctrine of judicial estoppel does not apply because her prior statement in bankruptcy court, concerning the amount of her monthly mortgage payments, was made in a consent decree and not "under oath." Ward further argues that there is no evidence that she "succeeded" in the bankruptcy proceeding.  She contends that it is "utterly speculative" that the bankruptcy court, in approving the consent order between the parties, accepted all the figures in the order.

## II.

Generally, we review the district court's grant of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (citation omitted).  But we employ an abuse-of-discretion standard to review the district court's application of judicial estoppel. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010).  A review for abuse of discretion requires us to

4

"affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.* (quotation omitted).

The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal citations omitted). It is "an equitable doctrine invoked by a court at its discretion." *Id.* at 750 (internal citation and quotation marks omitted). The Supreme Court has observed that, "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id.* (internal alteration omitted). Nevertheless, the Court has enumerated several factors that inform a court's decision concerning whether to apply the doctrine in a particular case: (1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage. *Id.* at 750-51.

Prior to the *New Hampshire* decision, the Eleventh Circuit utilized a two-factor test in the application of judicial estoppel: (1) that the allegedly inconsistent position was made under oath in a prior proceeding; and (2) such inconsistencies

5

must be shown to have been calculated to make a mockery of the judicial system.

*See, e.g., Taylor v. Food World, Inc.*, 133 F.3d 1419, 1422 (11th Cir 1998).  In

*Burnes v. Pemco Aeroplex*, *Inc.*, we acknowledged the intervening decision in *New*

*Hampshire*, and explained that:

> the two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions . . . and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case.  We recognize that these two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine.

 291 F.3d 1282, 1285-86 (11th Cir. 2002).

### III.

Turning to the instant appeal, we conclude that the district court properly

dismissed Ward's suit based on the doctrine of judicial estoppel.  Ward does not

dispute that her position in bankruptcy court, in which she stipulated that she

would make monthly payments of $1,319.50 to AMS, is inconsistent with her

assertion in her instant suit that her monthly mortgage payment was supposed to be

only $1,182.89.  She maintains that judicial estoppel does not apply because her

prior statement was not made under oath as it was contained in a consent decree

that both parties presented to the bankruptcy court for its approval.  But Ward's

prior statement did not necessarily have to be under oath in order for judicial

estoppel to apply.  Although we have explained that this Circuit's two-factor test

6

with respect to judicial estoppel—including that a prior statement be made under oath—is consistent with the Supreme Court's decision in *New Hampshire*, we have also highlighted that these two factors are not "inflexible or exhaustive" and that "courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Burnes*, 291 F.3d at 1286. Notably, in *New Hampshire*, the Supreme Court applied the doctrine of judicial estoppel where a party's earlier inconsistent representation was made in a consent decree rather than in a pleading under oath. *See New Hampshire*, 532 U.S. at 751-55 (concluding that New Hampshire was barred by judicial estoppel from challenging its "lateral marine boundary" with Maine based on the terms of a 1977 consent decree).

Moreover, contrary to Ward's assertion, the parties did not merely settle their claims without any discussion of the basis upon which the agreement was reached. Rather, both sides presented a detailed consent order for the bankruptcy court's approval, in which Ward stipulated that her monthly payment was $1,319.50 and convinced the bankruptcy court to accept this position to avoid the risk of foreclosure. As such, we find no merit to Ward's assertion that she did not succeed in her prior litigation in the bankruptcy court.

Additionally, although our case law recognizes that there is no requirement that the party invoking judicial estoppel show prejudice, *see Burnes*, 291 F.3d at

7

1286, prejudice serves an important role in the applicability of the doctrine in this context, for it is difficult to impute an intent "to make a mockery of the judicial system" where the complaining party was aware of the inconsistency in sufficient time and in a position to properly raise an objection in the original proceeding, *id.* at 1285. Put another way, judicial estoppel is meant to prevent litigants from deliberately changing positions after the fact to gain an unfair advantage. As noted in the district court's order, Ward would "gain an unfair advantage and AMS would suffer an unfair detriment" if she was allowed to proceed with her instant FDCPA suit because she convinced AMS not to foreclose on her home in return for her express agreement to pay $1,319.50 per month until her mortgage was up-to-date.

For the reasons stated, we conclude that judicial estoppel bars Ward's challenge to the amount of her monthly mortgage payment. Accordingly, we affirm the district court's dismissal of Ward's civil suit against AMS.

**AFFIRMED.**