Angela Dianna THOMPSON and
Albert Thompson, Plaintiffs,

v.

Roger QUARLES and Werner
Enterprises, Inc.,
Defendants.

Civil Action No. CV107–149.

United States District Court,
S.D. Georgia,
Augusta Division.

July 16, 2008.

Stephen E. Shepard, Shepard, Plunkett, Hamilton, Boudreaux & Tisdale, LLP, Augusta, GA, for Plaintiffs.

Grant B. Smith, Dennis, Corry, Porter & Smith, LLP, Michael W. Horst, Hall, Booth, Smith & Slover, PC, Atlanta, GA, for Defendants.

## ORDER

ANTHONY A. ALAIMO, District Judge.

Plaintiffs, Angela Dianna Thompson and Albert Thompson, filed the above-captioned case against. Defendants, Roger Quarles and Werner Enterprises, Inc. ("Werner"), asserting personal injury and loss of consortium claims as a result of a motor vehicle collision.

Presently before the Court is Defendants' motion for summary judgment. Because application of judicial estoppel is not

warranted in this case, the motion will be **DENIED**.

## BACKGROUND

Viewing the facts in the light most favorable to Plaintiffs, as the Court must on a summary judgment motion, the facts are as follows. On October 16, 2005, the Thompsons were in their vehicle on Wheeler Road in Augusta, Georgia, and were turning on to the Bobby Jones Expressway, I–520, westbound on-ramp. Mr. Thompson was driving, and Mrs. Thompson was in the passenger seat.

Mrs. Thompson was injured when Quarles, who was driving Werner's truck in the course of his employment for the trucking company, failed to yield the right of way at the intersection, and turned his tractor-trailer left into the oncoming path of the Thompsons' pickup truck, striking the right-front corner of the pickup. According to Mrs. Thompson's affidavit, her husband had the green light, and both of her knees were injured in the collision. Mrs. Thompson's injuries resulted in her having two total knee replacement surgeries in 2007.

As a result of Defendants' negligence, Mrs. Thompson also required medical care, incurred medical expenses, lost wages, and experienced pain and suffering. Mr. Thompson has filed a loss of consortium claim, but did not suffer any serious personal injuries during the collision himself, and has not asserted a personal injury claim on his own behalf.

On July 15, 2005, Plaintiffs filed a voluntary petition for bankruptcy, pursuant to Chapter 13 of the Bankruptcy Code.[1] On November 21, 2005, five weeks after the collision, Bankruptcy Judge John S. Dalis entered an order confirming the plan. Plaintiffs did not amend their schedules to include their cause of action arising from the auto wreck before confirmation, and have not amended their petition to date. Plaintiffs' Chapter 13 plan is in current status, and is a composition plan funded by the wages of Albert Thompson. Dkt. No. 26, Ex. A, Huon Le Aff.; Ex. B, Order of Judge Dalis; *see generally* 8 Collier on Bankruptcy ¶ 1300.02 (15th ed. rev.2008).

The terms of the plan require the Thompsons to make payments of $580 per month for sixty months. Dkt. No. 26, Ex. A at 3. The Thompsons are scheduled to make their last payment near the end of 2010. *In re Thompson*, Case No. 05–12298, Dkt. No. 14 (Bankr.S.D.Ga.). The pro-rata plan provides that the Thompsons' unsecured creditors are to be paid at least ten percent of the debt owed to them by the Thompsons. *In re Thompson*, Case No. 05–12298, Dkt. No. 12 (Bankr.S.D.Ga.).

On October 2, 2007, Plaintiffs filed the above-captioned case in the Superior Court of Richmond County, Georgia. Defendants removed the case to federal court, and the Court has diversity jurisdiction over the case.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment

---

1. With some limited exceptions not relevant here, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), took effect on October 17, 2005. Pub.L. No. 109–8, 119 Stat. 23, Title XV, § 1501 (2005). The Thompsons' bankruptcy petition was filed before the new law became effective, and their bankruptcy case is governed by the preexisting statutory framework. While the bankruptcy reform act made substantial revisions to the Bankruptcy Code, none of those changes are germane to the Court's analysis herein.

as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court must view the facts in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in his favor ...", *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal quotation marks omitted).

### DISCUSSION

Defendants contend that the doctrine of judicial estoppel prevents Plaintiffs from pursuing their tort claims against them. The Thompsons' personal injury cause of action arose thirty-six days before the Bankruptcy Judge confirmed the plan, but three months after the bankruptcy petition was filed. The doctrine of judicial estoppel can apply only if the Thompsons had a duty to disclose their post-petition lawsuit. Accordingly, a threshold question that the Court must resolve is whether the Thompsons' cause of action was property of the bankruptcy estate.

### I. Property of the Estate

 A debtor [who] seeks protection from a bankruptcy court must disclose all assets, or potential assets, to the bankruptcy court. *The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change. . . .* Full and honest disclosure in a bankruptcy case is "crucial to the effective functioning of the federal bankruptcy system."

*Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir.2002) (internal citation omitted) (emphasis added)(quoting *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996)). Yet, this duty to disclose presupposes that the relevant property is part of the bankruptcy estate, which can be an elusive inquiry, as the following discussion illustrates.

Plaintiffs urge that there are three relevant categories of property that constitute property of the estate: (1) pre-petition property, (2) "specific" property acquired post-petition, but pre-confirmation, and (3) post-confirmation property that is necessary to the fulfillment of the plan. It is undisputed that Plaintiffs' tort claims are neither "pre-petition" nor "post-confirmation."

The Bankruptcy Code provides that certain property acquired post-petition constitutes property of the estate. 11 U.S.C. §§ 541(a)(5)[2] & 1306(a).[3] With these

---

**2.** That subsection provides that property of the estate includes:

Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or
(C) as a beneficiary of a life insurance policy or of a death benefit plan.

**3.** That subsection reads as follows:
Property of the estate includes, in addition to the property specified in section 541 of this title . . .—
(1) all property of the kind specified in such section that the debtor acquires after the

Code sections in mind, Plaintiffs submit that the "property of the estate" inquiry turns on the character of the property interests involved. According to the Thompsons, a post-petition personal injury claim and a loss of consortium claim are not part of the bankruptcy estate.

In further support of this argument, Plaintiffs cite Bankruptcy Rule 1007:

> Interests acquired or arising after petition. If, as provided by § 541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 10 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the ... chapter 13 individual debt adjustment case. If any of the property required to be reported under this subdivision is claimed by the debtor as exempt, the debtor shall claim the exemptions in the supplemental schedule. The duty to file a supplemental schedule in accordance with this subdivision continues notwithstanding the closing of the case, except that the schedule need not be filed in ... [a]

chapter 13 case with respect to property acquired after entry of the order confirming a chapter 11 plan or discharging the debtor in a chapter 12 or chapter 13 case.

Fed. R. Bankr.P. 1007(h).[4]

Under these provisions, Plaintiffs posit that the property interests asserted here are contingent and unliquidated tort claims, not specific "post-petition, pre-confirmation" property interests that are part of the estate. Plaintiffs suggest that if their claims are settled or reduced to final judgment, then at that time, it will be necessary for Plaintiffs to amend their schedules so the Bankruptcy Court can determine if the property is necessary to the fulfillment of their plan.

While the Court rejects Plaintiffs' interpretation of the law and their suggested approach, it does conclude that the Bankruptcy Court will have to determine whether the Thompsons' tort suit is necessary to fulfillment of their plan. Therefore, it is necessary to consider what this concept entails. Although much of the discussion that follows relates to assets acquired post-confirmation, it also applies

---

commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, or 11, or 12 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

4. In *Foreman v. J. Walter Constr. Co.*, 378 B.R. 717, 726 (2007), Judge Dalis considered the import of Rule 1007(h). Plaintiffs urge that Judge Dalis' explanation supports their position in this case. After quoting Fed. R. Bankr.P. 1007(h), Judge Dalis explained:

> This rule is clear. The duty to disclose property of the estate continues until the debtor receives a discharge in a chapter 13 case only as to the specific property "as provided by § 541(a)(5)." Property cov-

ered by 11 U.S.C. § 541(a)(5) includes post-petition property interests acquired by the debtor within 180 days of filing the petition that debtor acquires as a result of a bequest, devise, or inheritance, property settlement with debtor's spouse or divorce decree; or beneficiary of a life insurance policy or death benefit plan.

*Id.* at 726 n. 7. Yet, Plaintiffs fail to consider the import of § 541(a)(7) in determining the property of the estate. The Court discusses subsection (a)(7) below, and concludes that *Foreman* is distinguishable on *its* facts. It is not surprising that *Foreman* did not discuss (a)(7), either in the quoted passage or otherwise, given that there, the cause of action arose *post*-confirmation. *See In re Wilson*, 694 F.2d 236, 238 (11th Cir.1982) (per curiam); 11 U.S.C. § 1306; 11 U.S.C. § 1327(b).

to the Thompsons' pre-confirmation tort claim because they failed to disclose that claim prior to confirmation.

In *Telfair v. First Union Mortgage Corp.*, the Eleventh Circuit attempted to harmonize (arguably) conflicting provisions of the Bankruptcy Code, § 1306 and § 1327(b), by adopting the "estate transformation" approach. 216 F.3d 1333, 1340 (11th Cir.2000). *Telfair* sought a middle ground between the extreme positions of "estate termination" and "estate preservation," to wit:

> Under the estate termination approach, all property of the estate becomes property of the debtor upon confirmation and ceases to be property of the estate.... According to the estate preservation approach, all property of the estate remains property of the estate after confirmation until discharge, dismissal, or conversion.... A compromise between these two extremes is struck by the estate transformation approach, which regards only that property necessary for the execution of the plan as remaining property of the estate after confirmation.

216 F.3d at 1340.

*Telfair*'s approach is not without its difficulties, and courts that have attempted to determine whether post-confirmation property is "necessary" to fund the plan have been flummoxed. *In re Wetzel*, 381 B.R. 247, 253 (Bankr.E.D.Wis.2008); *Annese v. Kolenda*, 212 B.R. 851, 853–54 (W.D.Mich. 1997); *United States v. Harchar*, 371 B.R. 254, 267–68 (N.D.Ohio 2007) (citing cases critical of the estate transformation approach).

Obviously, where creditors are getting paid back one hundred percent of the debts they are owed, then the post-confirmation property, or undisclosed pre-confirmation asset, should not be needed to fund the estate. *Donato v. Metro. Life Ins. Co.*, 230 B.R. 418, 423–24 (N.D.Cal.1999). In contrast, pro-rata plans are designed based on the amount of income debtors possess at, or prior to, confirmation. As a result, some courts have been at a loss to determine how an asset acquired post-confirmation is needed to pay for the original plan. Unless the debtors experience material changes in circumstances, and the plan requires modification, the newfound asset should not be needed. In *In re Harvey*, Bankruptcy Judge Lamar W. Davis, Jr., explained that "if the plan is delinquent and therefore subject to dismissal, post-confirmation assets may be necessary to fulfill the plan by curing these deficiencies." 356 B.R. 557, 564 (Bankr.S.D.Ga.2006).

The Court notes that modification of plans after confirmation is recognized by statute explicitly. 11 U.S.C. § 1329. Where there is a material change in circumstances in the debtors' ability to pay their creditors, for better or worse, it is appropriate to consider modifying the plan. *Harvey*, 356 B.R. at 564. But if the change is for the better after confirmation, for example, a cause of action accrues in the debtor, modification there seems to get the court closer to the "estate preservation" approach. In sum, it is unclear when the new asset is "necessary" to fund the "plan" and whether the "plan" is the original, previously confirmed plan, or a modified version of the confirmed plan that accounts for the value of the post-petition cause of action.[5]

---

**5.** Application in our case illustrates the difficulty. Presumably the Trustee would argue that the inheritance and business income is necessary to fund the *modified* plan that she has proposed for the Debtors. The Debtors would likely claim that only their post-petition wages are necessary to fund the *original* plan.

Interpreting *Telfair*, Judge Dalis reasoned that:

> Property of the estate in a chapter 13 case includes, all legal and equitable interests that the debtor holds at the time of filing, and any property interests the debtor acquires post petition but before the case is closed, converted, or dismissed.... However, when the debtor's plan is confirmed, "only the amount required for the plan payments remain[ ] property of the estate."

*Foreman*, 378 B.R. at 722 (cited and quoted cases and statutes omitted).

The Thompsons contend that *Foreman* supports their position in this suit. However, in *Foreman*, the court considered whether a wrongful death claim, which occurred *after* confirmation of the bankruptcy plan, was "property of the estate." 378 B.R. at 719 & 727. There, no parties urged that the debtor's interest in the lawsuit was necessary to the fulfillment of the plan. *Id.* at 722–23. Accordingly, Judge Dalis refused to apply judicial estoppel. *Id.* at 726.

■ Plaintiffs maintain that a claim for personal injury arising post-petition, but pre-confirmation, which is not within the specific classes of property enumerated in § 541(a)(5), need not be disclosed on the debtors' schedules, and a lack of such disclosure is not the equivalent of adopting contradictory positions in two different judicial proceedings.

■ The Court disagrees. The Thompsons' cause of action existed at the time of confirmation. Consequently, it was an as-

set of the bankruptcy estate. *Old Republic Ins. Co. v. Farmer,* 324 B.R. 918, 923 (Bankr.M.D.Ga.2005)(finding the lawsuit in question was not property of the estate because it arose five years after confirmation)(citing *Telfair*, 216 F.3d at 1340). Under the law as it is interpreted in this Circuit, all the property acquired by a Chapter 13 debtor until confirmation is property of the estate. Plaintiffs have pointed to no authority to the contrary, and the Court has not located any. The cases cited by Plaintiffs all involve property acquired *post*-confirmation, and the conclusion that such assets do not constitute property of the estate, while debatable, is a rational interpretation of § 1327.[6]

■ As Plaintiffs note, *Telfair* teaches that, upon confirmation, whatever property that is unnecessary to fulfillment of the plan is returned to the debtor's control. However, debtors are not permitted to fail to disclose potential assets, and then rely upon this fact to argue that lawsuit has vested in them because confirmation has occurred in the meanwhile. The fact that the potential lawsuit was not disclosed by the debtors makes it impossible for the trustee to abandon the property back the debtor in such circumstances. "Failure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate." *Parker v. Wendy's Int'l, Inc.,* 365 F.3d 1268, 1272; *see also* 11 U.S.C. § 554(d).[7]

The Court's conclusion is buttressed by 11 U.S.C. § 541(a)(7), which provides that the property of the estate includes "any

---

*In re Wetzel,* 381 B.R. at 253 (emphasis added); *see also In re Ross,* 278 B.R. 269, 275 (Bankr.M.D.Ga.2001)(indicating that only those funds needed to maintain the original plan should be considered).

**6.** That statute provides in pertinent part that "except as otherwise provided in the plan or order confirming the plan, the confirmation

of the plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b).

**7.** *Telfair* does not mandate that pre-confirmation assets that are unrevealed to the bankruptcy court are returned to the debtor's control. *See Harvey,* 356 B.R. at 563.

interest in property that the estate acquires after the commencement of the case." While debtors did not have a property interest in the lawsuit at the time of filing their petition, this provision permits the estate, in a Chapter 13 case, to acquire the tort claim because it arose before confirmation. *Parker*, 365 F.3d at 1272; *Telfair*, 216 F.3d at 1340.

> Although we agree that section 541(a)(7), does not render every "interest in property that the estate acquires after the commencement of the case" available for the debtor's exemption claims, we find that *section 541(a)(7)* does bring into the estate every such interest not covered by a specific statutory provision mandating some other treatment.

*Wilson*, 694 F.2d at 238.

■ Significantly, the Court's conclusion that this lawsuit is property of the estate rests upon the fact that the Thompsons' bankruptcy petition was filed pursuant to Chapter 13, not Chapter 7. In a Chapter 7 case, all non-exempt property that the debtor owns at the time of filing is liquidated for the creditors' benefit. At the same time, though, at the time of filing, a Chapter 7 debtor gets a "fresh start," and property acquired post-petition is not property of the estate.

■ In contrast, Chapter 13 debtors aim for rehabilitation and to adjust their debts owed to their creditors, which are paid out on a regular schedule going forward. Thus, there is *one* Chapter 13 estate, which continues to accumulate property after the debtor files his petition. In Chapter 13 cases, at least prior to confirmation, all property of the kind specified in § 541 "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted" is property of the estate. 11 U.S.C. § 1306.[8]

The Thompsons' cause of action arose before confirmation, and the Thompsons should have amended their schedules to apprise the Bankruptcy Court, the Bankruptcy Trustee, and their creditors, of this potential asset. Next, the Court will consider whether application of judicial estoppel is an appropriate remedy to sanction Plaintiffs' failure to do so.

## II. Judicial Estoppel

The Supreme Court has elaborated on the circumstances under which judicial estoppel may apply:

> [S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position.... Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that

---

8. The reason all pre-petition and all post-petition property is brought into a single estate in a Chapter 13 case is twofold. First, although the estate is administered by a trustee, distribution by the trustee is made only in accordance with a Chapter 13 plan proposed by the debtor which must be confirmed by the court before becoming effective. Secondly, "except as provided for in a confirmed plan or order confirming [the] plan, the debtor shall remain in possession of all property of the estate" and "the confirmation of a plan

vests all of the property of the estate in the debtor." §§ 1306(b), 1327(b). There is no separation of "property of the estate" from property of the individual debtor at the time of filing, although with regard to certain property, generally income, e.g., the trustee, under the order of confirmation of the plan, and not the debtor, has control over such property.
*In re Brannan*, 40 B.R. 20, 25 (Bankr.N.D.Ga. 1984); *id.* at 22–25; *see also Wade v. Bailey*, 287 B.R. 874, 878–79 (S.D.Miss.2001).

either the first or the second court was misled,"... Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," ... and thus poses little threat to judicial integrity.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)(internally cited and quoted decisions omitted).

"In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id.* at 751. "The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *Am. Nat'l Bank of Jacksonville v. FDIC,* 710 F.2d 1528, 1536 (11th Cir.1983).

 In sum, the Court considers whether the party's position is inconsistent with one advanced in a prior case, whether the party succeeded in having the previous court adopt his position,[9] and whether the

party would derive some unfair benefit in the present case from his conduct.

 Plaintiffs' representations in their voluntary bankruptcy petition were made under oath, and were never amended. As treated in more detail below, such conduct has been found to be sufficient to establish that a party's later position is inconsistent with its earlier position advanced in the bankruptcy court. Moreover, " '[d]eliberate or intentional manipulation can be inferred from the record,' where the debtor has knowledge of the undisclosed claims and has motive for concealment." *Barger v. City of Cartersville,* 348 F.3d 1289, 1294 (11th Cir.2003)(internally quoted citation omitted).

Here, Plaintiffs had knowledge of the undisclosed claim, which occurred five weeks prior to confirmation. Defendants fault Plaintiffs for seeking to have the bankruptcy court discharge their obligations, while keeping any proceeds from their personal injury case for themselves. Quarles and Werner contend that this establishes the Thompsons' motive to undermine the Court's integrity.

The Court observes that the application of judicial estoppel in non-bankruptcy courts to bar debtors' causes of action against purported tortfeasors could be described as a doctrine run amok. *See* Hon.

---

9. As a practical matter, in the Chapter 13 context, the actual "adoption" of the debtors' schedules by the Bankruptcy Court is debatable.

> If different courts are involved, it is the court applying the doctrine that will determine whether the elements of judicial estoppel were met in the original court, including whether the first court adopted the original position. In those instances, there is room for interpretation, perhaps error, as to whether the position taken in the original court was actually, or sufficiently, adopted, so as to, justify the doctrine's use. This is particularly true in those instances where the plaintiff is a current or former bank-

ruptcy debtor and the doctrine is being applied to bar that plaintiff's suit based upon the debtor's failure to reveal the cause of action in the bankruptcy schedules. The court applying the estoppel may not be aware of the actual effect of the omission in the bankruptcy case, or it may not know whether the bankruptcy court was aware of the omission at all.

75 Am. Bankr.L.J. at 202.

"In reality, a bankruptcy judge presiding over a typical Chapter 13 case rarely ever sees or 'evaluates and rules on' the debtor's schedules unless some extraordinary event occurs to bring the schedules to the court's attention." *Id.* at 208–09.

James D. Walker, Jr. & Amber Nickell, *Judicial Estoppel and the Eleventh Circuit Consumer Bankruptcy Debtor*, 56 Mercer L.Rev. 1115 (2005); Hon. William Houston Brown, Lundy Carpenter, & Donna T. Snow, *Debtors' Counsel Beware: Use of the Doctrine of Judicial Estoppel in Nonbankruptcy Forums*, 75 Am. Bankr. L.J. 197 (2001).

Disagreement among jurists and discord in case outcomes has been caused by a motley assortment of suspicious behavior by suspected dissembling debtors; a group of technical, inscrutable, overlapping, and inconsistent bankruptcy statutes; an ignorance of bankruptcy procedures and practicalities by non-bankruptcy courts and practitioners; confusion over which law applies, state or federal; [10] and an endless variance in the circumstances of individual cases.[11] In particular, Georgia state and federal decisions applying the doctrine of judicial estoppel have come in for withering criticism by bankruptcy law judges and commentators for their often haphazard and unnecessarily harsh results. *See Brown*, 75 Am. Bankr.L.J. at 205–14 & 227; *Walker*, 56 Mercer L.Rev. at 1124–25; *IBF Participating Income Fund v. Dil-*

---

**10.** There is some dispute regarding whether the law of judicial estoppel is governed by state or federal law in diversity cases. *See generally*, Ashley S. Deeks, *Raising the Cost of Lying: Rethinking Erie for Judicial Estoppel*, 64 U. Chi. L.Rev. 873, 884–86 (1997). At least in cases involving debtors with unscheduled causes of action, the Georgia state courts take the view that judicial estoppel is a federal doctrine, but the Georgia courts have no qualms about applying it to preclude state law claims. *E.g.*, *Wolfork v. Tackett*, 273 Ga. 328, 328, 540 S.E.2d 611 (2001), *overruled on other grounds by Period Homes v. Wallick*, 275 Ga. 486, 488, 569 S.E.2d 502 (2002). Perhaps this is done out of comity, or in an attempt to protect the integrity of the bankruptcy court, but it is peculiar that a state court would apply a federal procedural doctrine at all, or that it would apply a federal substantive doctrine to a state law claim. In contrast, the Eleventh Circuit has determined that, in diversity cases, "the application of the doctrine of judicial estoppel is governed by state law." *Original Appalachian Artworks, Inc. v. S. Diamond Associates*, 44 F.3d 925, 930 (11th Cir.1995); *Osborn v. Durant Bank & Trust Co.*, 24 F.3d 1199, 1207 & n. 11 (10th Cir.1994).

Other circuits have disagreed, and those courts apply the federal law of judicial estoppel uniformly. *See Ryan Operations*, 81 F.3d at 358 n. 2 (Sarokin, J., concurring); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 n. 4 (4th Cir.1982); *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 602–04 (9th Cir.1996)(collecting cases). In general, those courts have reasoned that strong federal policies are at stake, and that "a federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose." *Ryan Operations*, 81 F.3d at 358 n. 2 (Sarokin, J., concurring). One circuit has referred to the doctrine as a "hybrid between substance and process." *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1551 (7th Cir.1990); *see also Middleton v. Caterpillar Indus., Inc.*, 979 So.2d 53, 57–60 (Ala.2007).

As noted, this is a diversity case involving tort claims arising under Georgia law. Based on the foregoing, particularly given the disagreement between the Georgia courts and the Eleventh Circuit regarding which law governs in this sort of situation, the Court is left in something of a legal quandary regarding the application of the judicial estoppel doctrine. The parties have not briefed the issue of which law applies, but the Court concludes that it is of little practical import here because the governing state decisions are consistent with (what would be) controlling federal precedent in all material respects, at least as far as the case before the Court is concerned. *See, e.g., Battle v. Liberty Mut. Fire Ins. Co.*, 276 Ga.App. 434, 435, 623 S.E.2d 541 (2005).

**11.** In two thoughtful opinions, two bankruptcy judges of this district, Judges Dalis and Davis, came to irreconcilable conclusions about the interpretation of the relevant statutes and whether post-confirmation assets were property of the estate. *Compare Foreman*, 378 B.R. at 723–25, with *Harvey*, 356 B.R. at 562–65.

*lard–Winecoff, LLC,* 275 Ga. 765, 766, 573 S.E.2d 58 (2002).

 In an effort to apply the law in a coherent and just fashion to the facts of the instant case, a first principle to bear in mind is that the application of judicial estoppel is an equitable doctrine, that the trial court judge has discretion to apply as the circumstances warrant. Second, the doctrine exists to guard the integrity of the Court and to prevent unscrupulous litigants from making a mockery of justice by intentionally taking irreconcilable positions in different judicial proceedings. *Burnes,* 291 F.3d at 1285.

Circumstances showing that debtors have made a "mockery of justice" imply a strong showing of intent to deceive. While such intent *can* be inferred from the circumstances, such as where a debtor stands to gain financially from failing to disclose a cause of action, *id.* at 1287, Defendants have pointed to no authority suggesting that such an inference *must* be drawn in any particular case, such as this one, and the Court has uncovered none.

Here, the Court does not perceive that its integrity, either in the District Court action or in the Bankruptcy proceeding, has been impaired seriously by the Thompsons' conduct. "[D]etermining whether a failure to disclose was based on an honest mistake or intentional manipulation of the court depends on the facts of each case." *Kitchen v. WSCO Petroleum Corp.,* CV04–828–ST, 2006 WL 118515 at *6, 2006 U.S. Dist. LEXIS 3738 at *15 (D.Or. Jan. 13, 2006); *Snowden v. Fred's Stores of Tenn., Inc.,* 419 F.Supp.2d 1367, 1372–73 (M.D.Ala.2006)(finding that the *Burnes* inference was permissive rather than mandatory).

The Court is aware that any decision it reaches with respect to Defendants' judicial estoppel argument can affect persons, and companies, who are not party to this litigation. Under the facts presented here, it is an incongruent remedy to allow Quarles and Werner, alleged tortfeasors, to escape liability, while the Thompsons' creditors are punished. *In re Lewis,* 273 B.R. 739, 748 (Bankr.N.D.Ga.2001). Such a result is unwarranted, particularly given the lack of evidence of bad faith by the Thompsons. In the instant case, the court can infer no more than mere carelessness or inadvertence by the debtors. *Ryan Operations,* 81 F.3d at 364–65.

Further, a survey of the prior decisions of the Eleventh Circuit reveals that application of the doctrine of judicial estoppel is neither necessary nor appropriate in this case. In *Burnes v. Pemco Aeroplex, Inc.,* the Eleventh Circuit upheld the district court's grant of summary judgment based on judicial estoppel. 291 F.3d at 1283. Six months after filing for Chapter 13 protection, the debtor, Billups, filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against his employer. Almost two years after that, he filed an employment discrimination claim against his employer with thirty-five other co-workers. Nearly a year after filing the employment discrimination suit, Billups sought to convert his Chapter 13 case to one under Chapter 7. Billups was required to amend his schedules as part of the conversion process, but he failed to report the pending lawsuit as an asset. After conversion, Billups received a "no asset" discharge of his debts, which exceeded $38,000. *Id.* at 1284.

 Several facts exist to distinguish the instant case from *Burnes.* In *Burnes,* it is unclear when the cause of action arose that gave the plaintiff the right to bring his employment discrimination claim. If those facts predated the filing of the petition, then the case for applying judicial

estoppel in *Burnes* is straightforward, and shows an important difference from the facts of this case. Unlike many of the issues discussed in this case, it is an uncontroversial proposition to declare that a contingent legal claim arising pre-petition is property of the estate. *See* 11 U.S.C. § 521.

In addition, in *Burnes,* the lower court was confronted with amended schedules as a result of the conversion, wherein the debtor failed to disclose the *pending* lawsuit in an unmistakable fashion. *See Farmer,* 324 B.R. at 920–21. Such facts strengthen the inference of intent to deceive by that debtor, and these facts are absent here. Also, the *Burnes* debtor received a "no asset" discharge, making the debtor's motive for gain more evident. 291 F.3d at 1283–84.

Nor does *Barger v. City of Cartersville* compel the Court to apply judicial estoppel. Barger had filed a suit seeking injunctive relief six weeks before filing for bankruptcy. 348 F.3d at 1291. Two months after seeking bankruptcy protection, Barger amended her nonbankruptcy lawsuit to add claims for compensatory and punitive damages. Three days later, Barger lied to the trustee, reporting that her other lawsuit sought equitable relief only. In other words, Barger suggested that the case was not of any monetary value to her creditors. Thereafter, Barger received a "no asset" discharge of her debts, which exceeded $58,000. *Id.* Those facts are sufficient to distinguish the case from the circumstances here. *See Cohen v. Arlington Heavy Hauling, Inc.,* 368 B.R. 898, 904 (Bankr.M.D.Fla.2007).

The Eleventh Circuit case with facts closest to those presented here is *De Leon v. Comcar Indus. Inc.,* 321 F.3d 1289 (11th Cir.2003.) (per curiam). In *De Leon,* as here, the debtor filed for bankruptcy, then filed a separate lawsuit, and the plan was later confirmed, and De Leon had not amended his schedules to disclose the lawsuit as an asset. Yet, *De Leon* does not compel application of judicial estoppel to the Thompsons' case because there, the debtor knew about his other cause of action *before* filing for bankruptcy relief, as he had filed a charge of discrimination with the EEOC eleven months before seeking bankruptcy protection. *Id.* at 1290–92.

Another Eleventh Circuit case, *Parker v. Wendy's International, Inc.,* suggests that the Court should exercise some restraint in applying judicial estoppel in cases with less egregious facts than those presented in *Burnes, Barger,* and *De Leon.* In *Parker,* the debtor filed a Title VII action prior to filing a Chapter 7 bankruptcy petition and thereafter, received a "no asset" discharge. Before the discrimination case came to trial, the plaintiff's attorney sought a continuance to advise the bankruptcy trustee of the debtor/plaintiff's inadvertent failure to disclose the lawsuit. 365 F.3d at 1269–70.

▬ The bankruptcy court permitted the trustee to reopen the case, and the trustee moved to intervene as the real party in interest in the employment discrimination action. Thereafter, the court of appeals overturned the district court's application of judicial estoppel to bar the Title VII claims from going forward. The *Parker* court noted that real party in interest was the trustee, not a debtor who had been less than forthcoming with respect to her assets in the bankruptcy proceeding.[12]

12. Th[is] holding in *Parker* is inapplicable to Chapter 13 cases. In Chapter 7 cases, all pre-petition causes of action belong to the estate and generally must be prosecuted by the trustee.... In contrast, a Chapter 13 debtor maintains control over all assets, *see* 11

Additionally, the trustee reopened the case before the defendant filed its motion to dismiss based on judicial estoppel. *Id.*

In light of the foregoing discussion, the Court concludes that judicial estoppel should not be applied to preclude the Thompsons' tort suit. In weighing the *New Hampshire* factors, the Court finds that Plaintiffs will not derive an unfair benefit in the present case from their conduct because there is scant evidence that the Thompsons' omission was either intentional, or calculated to make a mockery of the judicial system.

The strident and mechanical application of judicial estoppel leads it to become a sword of the defense bar rather than a shield of judicial integrity. *See Strauss v. Rent–A–Center, Inc.,* 192 Fed.Appx. 821, 823 (11th Cir.2006)(application of judicial estoppel reversible error where there was a lack of evidence of intent to deceive by the debtor and of success in the prior tribunal).

 Still, the Court has found that the Thompsons' lawsuit is property of the estate. "While a case is open, a debtor can freely amend his schedules." Walker, 56 Mercer L.Rev. at 1116. The Thompsons' case is current, that is, it is still in payment. Conceivably, a modification of the Thompsons' plan could increase the distribution to unsecured creditors. This approach protects the Thompsons' creditors, yet does not permit Quarles and Werner to benefit from the unwarranted application of judicial estoppel.

U.S.C. § 1303, and therefore has standing to bring suit in his own right.

The pertinent cause of action arose before the plan was confirmed. Because it was never disclosed by the debtors, it was not abandoned back to them by the trustee. Neither the trustee nor the bankruptcy court ever had an opportunity to consider the value of the lawsuit before the plan was confirmed, or the impact of the lawsuit on the Thompsons' pro-rata obligations to their unsecured creditors.

Thus, it is appropriate for the Thompsons to amend their schedules to apprise the bankruptcy court of their tort claims so it can determine whether modification of the plan is appropriate. *Rowan v. George H. Green Oil, Inc.,* 257 Ga.App. 774, 775–76, 572 S.E.2d 338 (2002) ("if the debtor initially fails to list the claim as a potential asset but later amends the bankruptcy filing or moves to reopen the bankruptcy proceeding to include the claim, judicial estoppel will not bar a later recovery on the claim.")(quoting *Smalls v. Walker,* 243 Ga.App. 453, 456, 532 S.E.2d 420 (2000)).

## CONCLUSION

For the reasons described above, Defendants' motion for summary judgment is **DENIED.** Dkt. No. 18.

*Snowden,* 419 F.Supp.2d at 1371 (internal citation omitted).